E. A. MARKEY and Carrie Belle McElroy, Executrix CTA of the Estate of E. R. McElroy and also individually as the sole heir and devisee under the Will of E. R. McElroy, deceased, Plaintiffs,

v.

BELCO PETROLEUM CORPORATION, a Delaware corporation, and Gertrude D. Torgeson, Executrix of the Estate of A. C. Torgeson, deceased, Defendants.

Civ. No. 4488.

United States District Court
D. Wyoming.

Dec. 4, 1961.

Guy & Phelan, Cheyenne, Wyo., and Richard I. Drahn, Denver, Colo., for plaintiffs.

Paul B. Lorenz and A. G. McClintock, Cheyenne, Wyo., for defendants.

KERR, District Judge.

In this suit plaintiffs assert their right to the proceeds from the sale of certain oil and gas lease interests. In support of their demand they seek to affirm their title in the leases on the basis of their operating agreement dated March 3, 1952, and on their agreement with Belco Petroleum Corporation executed on March 28, 1960, in which they agreed to transfer to Belco all of such whole or partial interests as they might establish in the leases. Plaintiffs also contest the claim which is made by defendant Gertrude D. Torgeson, Executrix of the estate of Alfred C.

Torgeson, deceased, to recover the same proceeds. Mrs. Torgeson bottoms her claim on an assignment agreement dated August 21, 1954, in which E. A. Markey and E. R. McElroy assigned to Alfred C. Torgeson all their right, title and interest in and to an operating agreement of March 3, 1952. She relies also on a contract dated February 27, 1959, in which Alfred C. Torgeson assigned to Belfer Natural Gas Company, predecessor of defendant Belco Petroleum Corporation, such rights as he might establish in the leases which were the subject of the same operating agreement. Belco admits that it has not paid the sum allegedly due plaintiffs and contends that it does not owe plaintiffs unless or until a judgment is rendered in their favor and against Torgeson.

The jurisdictional requirements of Title 28 U.S.C. § 1332, as amended, are satisfied, plaintiffs being residents of Colorado, Belco being a Delaware corporation, and Torgeson being a resident of Wyoming. The parties have stipulated and agreed that the total amount now held by Belco Petroleum Corporation to which some or all of the parties are entitled is $63,099.75. These funds are the outgrowth of a stipulation made in the case of Connelly v. Pan American Oil Corporation et al., in this court, Civil No. 4160, which provided only that Belco should pay certain sums of money "to Torgeson, McElroy and Markey" without settling the respective rights of such parties.

The resolution of the adverse claims and the disposition of the funds depend upon the judicial determination of the source from which Belco acquired the operating rights in the oil and gas properties. If Belco acquired the leases through its contract of March 28, 1960, with E. A. Markey and E. R. McElroy, then plaintiffs are entitled to the funds from Belco. On the other hand, if Belco derived its title from Torgeson through the chain of contracts executed on March 3, 1952, August 21, 1954, and on February 27, 1959. then the balance of the purchase price is due defendant Torgeson. Belco stresses that it is ready, willing and able to respect its agreements and to pay the proper party or parties in accordance with and as soon as there is a judicial settlement of the conflicting claims.

Plaintiffs predicate their claim to the fund held by Belco on, first, the validity of their agreement dated March 28, 1960, to deliver to Belco title to the leases identified as the "Group 2 Leases", and upon their assignment of such leases on June 9, 1960; and, secondly, on the alleged invalidity of their assignment of August 21, 1954, by which they conveyed to Torgeson all their right, title and interest to the March 3, 1952, operating agreement and the property therein described. Plaintiffs buttress their claims and arguments in support thereof with the Wyoming Supreme Court decision, wherein, they say, it was held that the assignment of August 21, 1954, failed to repose any title in Torgeson. They read that decision as continuing title to the leases in Markey and McElroy pursuant to the Operating Agreement of March 3, 1952.

■ I think plaintiffs have misconstrued and unduly extended the holding of the Wyoming Supreme Court in the case of Torgeson v. Connelly, Wyo., 348 P.2d 63. That Court denied Torgeson any rights under the operating agreement as against Connelly and with respect to leases not in issue before me. A critical analysis of that decision reveals that the Wyoming Supreme Court reached its conclusion on the basis of the record before it. What was contained in that record is not spelled out. There were apparently no findings of fact or conclusions of law of the trial court, which were the subject of the decision of the appellate court. It cannot be seriously contended that that decision is res judicata of the controversy in the case at bar, where the parties, subject matter, issues and evidence differ. The Wyoming Supreme Court decision is, therefore, not decisive of the issues and parties before me at this time. Continental Oil Co. v. Jones, C.A. 10, 1949, 176

F.2d 519. This case is undisputably one in which the issues have not been previously adjudicated.

■ I, too, am bound by the record developed in the trial of this case. Such record establishes without a doubt that the plaintiffs have not established their title to the "Group 2 Leases", and that their assignment of the Operating Agreement on August 21, 1954, was valid and effective to convey title in such leases to Torgeson. McElroy and Markey acquired their interest in the leases from Transco by the Operating Agreement dated March 3, 1952. Thereafter, on August 21, 1954, they assigned to Torgeson all their right, title and interest in that contract with Transco and to the property therein described, and Transco consented to that transfer. At the same time McElroy and Markey and Torgeson executed another agreement to confirm and set forth the consideration paid by Torgeson to McElroy and Markey for the assignment of the March 3, 1952, Operating Agreement. Paragraph five of this collateral agreement expressly and unambiguously states that the parties agreed that the assignment of the Operating Agreement executed on the same date "is valid and binding in all respects upon the parties".

The next assignment in the chain of title of these leases was the agreement of February 27, 1959, between Torgeson and Belfer Natural Gas Company, predecessor to Belco heretofore referred to. At this time, McElroy and Markey advanced no adverse rights to the leases. Until the decision of the Wyoming Supreme Court on December 16, 1959, plaintiffs acted as if they considered their assignment to Torgeson as valid and effective to convey title to him.

According to the testimony of Markey, he and McElroy did not expend any money to promote the leases except for rental payments amounting to $1,000.50. Neither did they assume any responsibility to perform the conditions of their Operating Agreement with Transco. Their conduct confirmed their conviction that they had assigned the rights and obligations of the Operating Agreement to Torgeson.

Furthermore, within a month after plaintiffs assigned the Operating Agreement they assisted Torgeson in drilling the McGinnis well as required by the operating agreement. Torgeson does not seek reimbursement for the expenses incurred in drilling the well required by the Operating Agreement to be drilled by plaintiffs. The uncontroverted evidence shows that Torgeson's net expenditures for the well totalled at least $15,000.00, which is admittedly adequate and good consideration for the assignment to him. There is evidence to show also that plaintiffs did not promote the sale of the leases and that it was Torgeson who negotiated the sale to Belco.

McElroy and Markey cannot purport to dispose of their title to the property herein in issue, stand idly by allowing their assignee to perform their erstwhile duties, and then repudiate their assignment and claim title to the leases in order to enjoy the profits gained by their assignee. Were there a breach of the assignment agreement to Torgeson, and such breach does not appear in the record, there is ample evidence to support the presumption that McElroy and Markey waived any alleged breach by their acquiescence to the acts of Torgeson. Pfister et al. v. Cow Gulch Oil Company, C.A.10, 189 F.2d 311. Plaintiffs, therefore, have not successfully challenged the title of Torgeson to the rights in the Operating Agreement of March 3, 1952, and to the property therein described, nor Torgeson's subsequent assignment to Belco.

In summary, it is the conclusion of this Court that Belco received its title to the "Group 2 Leases" through the mesne conveyances from Transco to Markey and McElroy on March 3, 1952, from Markey and McElroy to Torgeson on August 21, 1954, from Torgeson to Belfer, predecessor of Belco, on February 27, 1959, and by the final assignment to Belco, joined in by all the parties, on June 6, 1960.

In conjunction with their assignment of the Operating Agreement to Torgeson on August 21, 1954, plaintiffs and Torgeson executed the so-called companion agreement also dated August 21, 1954. That agreement is the key to the distribution of the net proceeds from the sale of the leases. In their reply to defendant Torgeson's counterclaim plaintiffs alleged that if the assignment of August 21, 1954, from McElroy and Markey to Torgeson is valid and effective, and if the consideration therefor is capable of being paid, then the Executrix of the Estate of Alfred C. Torgeson owes plaintiffs the balance of the consideration provided for in the companion agreement. Markey testified that it was never the intention of the assignors to take everything from Torgeson and that they always expected that he should get something. Torgeson, likewise, admits freely and frequently that Markey and McElroy are entitled to something out of the companion agreement.

Markey testified that he would have been satisfied to receive the proceeds derived from the sale of the leases in accord with the terms of the companion agreement. He added, however, that his position had changed since he now had to bear the expenses from the so-called Kemmerer litigation and therefore he considered a one-third split the only acceptable compromise. I cannot accede to this proposal. There is absolutely no foundation for allocating one-third of the proceeds to each party and the leases involved in the Kemmerer litigation are not in issue in the instant case so any expenses incurred over them are not material in the disposition of Belco's funds.

Under these circumstances, an equitable construction of the companion agreement is the only remedy. That agreement provided that Torgeson was to organize a corporation and assign his interests in the leases to such corporation. Thereafter the corporation was to pay $15,000.00 to plaintiffs "for moneys advanced" to it and plaintiffs were to receive one-fourth of the capital stock in the corporation. Admittedly Torgeson never organized a corporation and plaintiffs never received their share of the corporate stock nor any of the proceeds from the sale of the leases. Concededly, also, it would be futile now to organize a corporation since all the parties have assigned to Belco all their property rights which they may have had in the leases. But, as counsel for Belco suggests, the $63,099.75 may be considered as a fund to be disbursed as if upon the liquidation of the corporation. To this sum must be added the $15,000.00 which Torgeson has already received from Belco as part payment for the sale of the leases. The expenses and disbursements of this phantom corporation may be allowed against such fund and the balance may be paid out in accordance with the equities of the stockholders.

The expenses which are chargeable against the fund are the cost of the transcript of Markey in the trial of this case, the sum of $14,451.41 expended by Torgeson in litigation to preserve the title to the leases in issue herein and the rental payments made by Markey subsequent to August 21, 1954. Markey and McElroy are entitled to the $15,000.00 cash payment as I construe that requirement of the companion agreement as evidencing the intent of the parties to pay the grantors in part for their expenses in preserving the leases so that they would be in a condition to be conveyed to Torgeson. The parties do not dispute that Torgeson is to be credited with the $15,000.00 already received from Belco. Had the plaintiffs been issued their one-fourth of the capital stock they would now be entitled to one-fourth of the net proceeds or the balance in the so-called corporate fund after the aforesaid deductions and credits.

It is the conclusion of this Court that Belco owes the sum of $63,099.75 in full satisfaction for the assignment of the leases executed by and between Belco and Torgeson on February 27, 1959, and that said sum should be disbursed in accordance with the accounting hereinafter summarized, due consideration being given to the proper payments to be made by

Torgeson under his agreement with plaintiffs on August 21, 1954.[1]

Defendants' motions to dismiss the complaint made at the close of the plaintiffs' case are hereby denied. Strictly speaking, defendant Belco's motion to dismiss plaintiffs' first cause of action could be granted. Equity and justice, however, dictate that this Court retain jurisdiction over Belco as the stakeholder of the moneys which it is willing to disburse in accordance with the findings of this Court.

Other issues which were raised by the parties in the pleadings, but which were abandoned either during the pretrial conference, the trial, or in the parties' briefs, have been considered as waived by the parties as immaterial to the real issues to be decided herein.

Counsel for Belco Petroleum Corporation will prepare Findings of Fact and Conclusions of Law, together with Judgment, and submit the same within twenty (20) days from this date and the clerk will enter an order accordingly.

1. Method of arriving at distribution:

